UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GABRIELLA FLANAGAN,

               Plaintiff,

      -against-

NEW YORK CITY POLICE DEPARTMENT
OFFICER BRUCE CEPARANO, in his individual
capacity; NEW YORK CITY POLICE
DEPARTMENT OFFICER JUSTIN PICHON, in
his individual capacity; NEW YORK CITY
POLICE DEPARTMENT OFFICERS "JOHN
DOE" #1-2, in their individual capacities; and
THE CITY OF NEW YORK,

               Defendants.

**COMPLAINT AND JURY
TRIAL DEMAND**

Case No. _____

Plaintiff Gabriella Flanagan, by and through her attorneys, Emery Celli
Brinckerhoff Abady Ward & Maazel LLP, alleges as follows for her complaint:

**<u>PRELIMINARY STATEMENT</u>**

1.      On October 21, 2023, Plaintiff Gabriella Flanagan joined a peaceful protest in
Bay Ridge, Brooklyn. Like millions of Americans, Ms. Flanagan was dismayed and outraged at
the ongoing violence against civilians in Gaza. She joined this protest to express her support for
the Palestinian people. Yet Ms. Flanagan's attempt to peacefully exercise her right to speak out
about such violence was met by brutal and unjustified police violence, causing her serious injury.

2.      Around 6:00 p.m., the protest Ms. Flanagan had joined was surrounded by New
York Police Department ("NYPD") officers in Bay Ridge. Ms. Flanagan witnessed NYPD
officers grabbing a younger girl wearing a hijab. Ms. Flanagan grew fearful for the girl's safety

and yelled for the officers to let go of her. At no time did she interfere with the arrest of this young girl.

3.     Suddenly and without warning, Defendants Ceparano and Doe #1 grabbed Ms. Flanagan by her wrists and pulled her into the sea of officers. They then slammed her forcibly onto the pavement on her stomach.

4.     Ms. Flanagan did not make any movements or present any threat to the officers. She is 5 feet and 7 inches tall and weighed about 115 pounds at the time.

5.     Yet a group of male officers, including Defendants Ceparano, Pichon, and/or John Does #1-2, physically lifted Ms. Flanagan off the ground by her arms and her legs before throwing her down on her stomach on the pavement again. These officers slammed Ms. Flanagan on the ground repeatedly. They then handcuffed her aggressively.

6.     After Ms. Flanagan was handcuffed and restrained, face down on the pavement, Defendants Ceparano, Pichon, and/or Does #1-2 yanked Ms. Flanagan off of the ground by her arms with extreme force. Ms. Flanagan felt a splitting pain in her left shoulder. She screamed with pain and began to cry, yelling "my arm" and that her shoulder was in pain. She would later learn that the force with which the Defendant Officers had pulled her off the ground caused a second-degree separation in her shoulder muscle.

7.     Since Defendants' unlawful attack and detention, Ms. Flanagan has experienced significant pain resulting from her shoulder separation, limitations on her use of her arm, and resultant trouble accomplishing simple daily tasks like laundry. Ms. Flanagan now seeks redress for Defendants' unwarranted brutality and shameful abuse of authority.

## THE PARTIES

8.     Plaintiff Gabriella Flanagan is a citizen of the United States and a 24-year-old woman who currently, and at all times relevant to this Complaint, lives in Brooklyn, New York.

9.     Defendant NYPD Officer Bruce Ceparano, Tax ID No. 933682, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In his role, Officer Ceparano was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Ceparano is sued in his individual capacity.

10.     Defendant NYPD Officer Justin Pichon, Shield No. 21319, was, at all times relevant to this Complaint, a police officer employed by the City of New York. In his role, Officer Pichon was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, he acted within the scope of his employment and under color of state law. Defendant Pichon is sued in his individual capacity.

11.     Defendant NYPD Officers John Does #1-2 (collectively the "Doe Defendants'), names and shield numbers unknown, were each at all relevant times officers of the NYPD, and each was a duly appointed and acting officer, servant, employee, and/or agent of the City of New York. At all relevant times, Defendants Does #1-2 acted within the scope of their employment and under color of state law. The Doe Defendants are sued in their individual capacities.

12.     Defendants Ceparano, Pichon, and John Does #1-2 are collectively referred to as the "Individual Defendants."

13.     Defendant City of New York ("the City") is a municipal corporation duly organized under the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and

conduct of all NYPD matters, including the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel, including Officers Ceparano, Pichon, and Does #1-2 obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

14.     This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

15.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims and causes of action.

16.     The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

17.     Plaintiff demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

*Pro-Palestinian Protests in New York City*

18.     On October 7, 2023, Hamas, a terrorist group operating out of the Gaza Strip, launched an attack inside Israeli territory, killing more than 1,200 individuals and taking more than 200 people hostage.

19.     In response, Israel initiated an all-out war on Hamas in Gaza, bombing cities and restricting the flow of food and other aid into the enclave. This war continues to this day. It has

had a disastrous impact on Palestinian civilians. As of January 9, 2025, over 46,000 Palestinians have been killed in this conflict.[1]

20.     In this country, the conflict has led to extensive conversations over what the United States's role should be in the war. Many people, Ms. Flanagan among them, have spoken out against providing U.S. weapons and aid to Israel while Israeli airstrikes and ground assaults continue in Gaza. In New York City, dozens of peaceful protests have occurred where protesters express these views. Similar protests have occurred around the country.

21.     Many such protests have been met with aggressive responses from the NYPD.

***Ms. Flanagan Joins a Peaceful Protest on October 21, 2023***

22.     In the afternoon of October 21, 2023, Ms. Flanagan made plans with several friends to join one of the peaceful protests occurring in Bay Ridge, Brooklyn that day.

23.     Ms. Flanagan, who was 23 years old at the time, is a born and raised New Yorker. She is committed to advancing social justice issues in both her work and her personal life. At the time, she was working for a youth services nonprofit.

24.     Like thousands of Americans, Ms. Flanagan was deeply dismayed by the loss of civilian life in Gaza and outraged by the U.S. government's role in enabling this destruction.

25.     Ms. Flanagan sought to lend her voice to the chorus of protesters around the country speaking out on behalf of Palestinian lives.

26.     Ms. Flanagan set out for Bay Ridge, arriving at around 2:30 p.m. She went to the protest accompanied by a group of several friends.

27.     Once they arrived in Bay Ridge, Ms. Flanagan and her friends joined a group of demonstrators.

---

[1] Wafaa Shurafa & Samy Magdy, *More than 46,000 Palestinians have been killed in the Israel-Hamas war, officials say*, Associated Press (Jan. 9, 2025), https://apnews.com/article/israel-palestinians-hamas-war-news-01-09-2025-ffae654d619e8e848e2ceda8576e8fe5. .

28. About a half hour after she arrived and joined the protest, the protesters began marching through Bay Ridge.

29. There were thousands of protesters participating in the peaceful march.

30. The protest march continued for several hours. Protesters marched through Bay Ridge, accompanied by a large police presence of NYPD officers.

31. In the early evening, the protest reached a standstill.

32. Ms. Flanagan noticed a heavy NYPD presence amassing in the area.

33. The NYPD officers blocked the path of the protest, preventing the protesters from continuing on.

34. At this time, the protesters had halted in the street.

35. Individual protesters had begun to speak to the group, and it was unclear to Ms. Flanagan whether the protest would be continuing or whether it was ending.

36. Ms. Flanagan and a couple of her friends peeled away from the protest and went to the sidewalk to regroup and decide what they would do next.

37. Ms. Flanagan then realized that a member of their group was missing.

38. Ms. Flanagan and one of her friends, Shay Shapiro, went back into the group of protesters on the street to look for their other friend.

39. Eventually, Ms. Flanagan and Ms. Shapiro found their friend in the group of protesters.

40. But at that point, the crowd had become pressed together, as NYPD officers closed in on three sides.

41. A line of officers blocked Ms. Flanagan's path back to the sidewalk.

42.     A line of officers several rows deep blocked Ms. Flanagan's path forward in the street.

43.     Ms. Flanagan and her friends weren't sure where to go.

44.     About two or three rows of protesters were in between Ms. Flanagan and the closest line of NYPD officers.

### NYPD Officers Attack the Protesters, Including Ms. Flanagan

45.     While trying to figure out how to extricate themselves from the crowd, Ms. Flanagan and Ms. Shapiro saw NYPD officers, including Defendant Ceparano, grab a younger girl wearing a hijab, who was also protesting.

46.     Ms. Flanagan, Ms. Shapiro, and other protesters yelled at the officers to let the girl go.

47.     Ms. Flanagan did not move towards the police officers as she yelled.

48.     Ms. Flanagan did not physically interfere with the officers in any way.

49.     Suddenly, and without warning, Defendant Ceparano grabbed Ms. Flanagan by her right arm.

50.     At no point before grabbing Ms. Flanagan did Defendant Ceparano or any other NYPD officer order or direct Ms. Flanagan to disperse.

51.      Defendant Ceparano held one of Ms. Flanagan's arms.

52.     Defendant John Doe #1 grabbed Ms. Flanagan's other arm.

53.     Defendant Ceparano is male. Defendant Ceparano is taller and bigger than Ms. Flanagan.

54.     Ms. Flanagan is 5 feet 7 inches tall and weighed about 115 pounds at the time of this incident.

55.     Before Defendants Ceparano and Doe #1 threw Ms. Flanagan to the ground, they said nothing to Ms. Flanagan.

56.     Before Defendants Ceparano and Doe #1 threw Ms. Flanagan to the ground, they gave no order to Ms. Flanagan.

57.     Before Defendants Ceparano and Doe #1 threw Ms. Flanagan to the ground, they and Ms. Flanagan had no physical interaction or contact.

58.     When Defendants Ceparano and Doe #1 threw Ms. Flanagan to the ground, she was not facing them.

59.     Ms. Flanagan did not pose any threat to Defendants Ceparano, Doe #1, or to anyone else.

60.     As a result of Defendants Ceparano and Doe #1's assault, Ms. Flanagan was pulled through the group of protestors and into the sea of officers.

61.     Defendants Ceparano and Doe #1 slammed Ms. Flanagan forcibly onto the ground on her stomach.

62.     At least one additional officer grabbed Ms. Flanagan's legs.

63.     Defendants Ceparano, Pichon, and/or Does #1-2 lifted Ms. Flanagan off of the ground and then slammed her down again on the pavement on her stomach repeatedly.

64.     Ms. Flanagan's head hit the pavement.

65.     Ms. Flanagan did not hear the officers say anything to her while they did this.

66.     Defendants Ceparano, Pichon, and/or Does #1-2 held Ms. Flanagan's arms and legs, pinning her to the ground.

67.    As Defendants Ceparano, Pichon, and Does #1-2 held Ms. Flanagan down, Defendants Ceparano, Pichon, and/or Does #1-2 restrained Ms. Flangan's hands behind her back using metal handcuffs.

68.    While Ms. Flanagan was face down on the ground, Defendants Ceparano, Pichon, and/or Does #1-2 took property from her, including her cell phone.

69.    At no point did Ms. Flanagan resist a lawful order, or any order, from the NYPD.

70.    At no point did Ms. Flanagan resist arrest.

71.    After handcuffing Ms. Flanagan, Defendants Ceparano, Pichon, and/or Does #1-2 yanked her up off of the ground by her arms.

72.    Defendants Ceparano, Pichon and/or Does #1-2 pulled Ms. Flanagan off the ground with such force that she felt a splitting pain in her left shoulder.

73.    Ms. Flanagan screamed with pain and began to cry.

74.    Ms. Flanagan instantly knew something was very wrong with her left shoulder.

75.    Defendant Pichon dragged Ms. Flanagan backwards towards a NYPD transport bus parked about a block away.

76.    Ms. Flanagan continued to scream and cry with pain. She yelled, "my arm!"

77.    Defendant Pichon said nothing in response.

78.    Defendant Pichon kept Ms. Flanagan's arms handcuffed behind her back—an incredibly painful position given her shoulder injury.

79.    Defendant Pichon put Ms. Flanagan and her friend, Ms. Shapiro, on the bus.

80.    Ms. Flanagan and Ms. Shapiro waited on the bus for over an hour.

81.    During this time, Ms. Flanagan was in extreme pain.

82.     Ms. Flanagan and Ms. Shapiro shouted for medical assistance and banged on the windows seeking help.

***The NYPD Detains Ms. Flanagan***

83.     About two hours after her arrest, the NYPD transport bus took Ms. Flanagan and other arrestees to One Police Plaza for processing.

84.     Ms. Flanagan remained painfully handcuffed while she was on the bus and during the bus ride.

85.     At One Police Plaza, Ms. Flanagan was processed, fingerprinted, and searched.

86.     Ms. Flanagan asked what she was being charged with.

87.     No NYPD officer told her the charges.

88.     She was then detained in filthy, crowded conditions.

89.     Ms. Flanagan continued to experience serious pain in her left shoulder.

90.     Ms. Flanagan was not provided with any medical care while at One Police Plaza

91.     Ms. Flanagan was held at One Police Plaza for approximately four hours.

***The NYPD Finally Releases Ms. Flanagan with a Summons, and She Goes to the Emergency Room***

92.     At about 11:24 p.m., Defendant Pichon issued Ms. Flanagan a criminal court desk appearance ticket.

93.     Defendant Pichon had no probable cause to charge Ms. Flanagan with any crime.

94.     Defendant Pichon acted with malice.

95.     The NYPD released Ms. Flanagan at about midnight.

96.     Ms. Flanagan's desk appearance ticket listed her only offense as "PL 205.30." New York Penal Law Section 205.30 defines the crime of resisting arrest.

97.     The desk appearance ticket directed her to appear in Kings County Criminal Court on November 9, 2023.

98.     Once released, Ms. Flanagan went directly to the emergency room at New York Presbyterian, arriving at approximately 1:00 a.m.

99.     On November 9, 2023, Ms. Flanagan was informed that the Kings County District Attorney's Office had declined to prosecute this matter.

***Ms. Flanagan's Lasting Physical and Emotional Damages***

100.    Ms. Flanagan has experienced significant and debilitating physical and psychological distress because of Defendants' unprovoked, unjustified, and violent attack.

101.    Ms. Flanagan was in extreme pain immediately following Defendants' attack, and that pain continued throughout the evening while she remained in NYPD detention.

102.    In the early hours of the morning on October 22, 2023, immediately after her release from NYPD custody, Ms. Flanagan sought medical attention for her injuries at New York Presbyterian hospital.

103.    Staff at New York Presbyterian examined Ms. Flanagan's injuries and conducted X-rays of her shoulder.

104.    Staff at New York Presbyterian diagnosed Ms. Flanagan with a separated shoulder.

105.     New York Presbyterian provided Ms. Flanagan with a sling and painkillers and recommended that she follow up with an orthopedist as soon as possible. She was instructed to wear the sling at least until her orthopedics appointment.

106.    At her follow-up orthopedics appointment, on November 3, 2024, Ms. Flanagan was diagnosed with a Grade II-III shoulder separation.

107.  An MRI on December 20, 2023, confirmed a recent shoulder separation.

108.  Ms. Flanagan also received a CAT scan.

109.  Ms. Flanagan's doctors told her that the injury would require physical therapy.

110.  Ms. Flanagan sought out physical therapy as instructed by her doctors.

111.  Ms. Flanagan went to physical therapy twice a week for about three months. She ultimately ended her treatment because the cost of the co-pay was prohibitively expensive.

112.  Ms. Flanagan kept her left arm in a sling for three months, at the direction of medical professionals.

113.  Ms. Flanagan's injury caused her serious pain for months.

114.  Her physical therapist observed that the pain interfered with Ms. Flanagan's ability to use her left arm in daily activities and lift objects, and that she had impaired mobility in her left arm and weakness in her shoulder girdle.

115.  To this day, over a year after the attack, Ms. Flanagan continues to suffer from pain and discomfort in her shoulder as a result of this injury. She finds it difficult to pick up things weighing over twenty pounds. Walking while wearing a backpack causes pain to her shoulder. Even walking for a prolonged period of time without holding anything is painful. For at least a year after her injury, Ms. Flanagan kept her sling with her on days where she would be walking long distances, since she knew it would hurt her arm.

116.  Ms. Flanagan is left-handed. The injury to her left arm has impacted her ability to be self-sufficient and complete basic chores like laundry.

117.  Ms. Flanagan paid out of pocket for some of the medical treatment she sought as a result of Defendants' attack.

118.     In addition to her physical injuries, Ms. Flanagan has experienced, and continues to experience, significant psychological and emotional distress due to Defendants' actions.

119.     Prior to the attack, Ms. Flanagan was effectively managing her mental health and was employed as the parent and community coordinator at the Greenwich House, a non-profit providing youth services, among other things.

120.     The attack left Ms. Flanagan traumatized. The sheer violence of the assault Defendants perpetrated against her was terrifying. She experienced nightmares, fear, and paranoia. She suffered from persistent worry and experienced trauma-related flashbacks to the incident. Ms. Flanagan saw the officers who assaulted her around the city after her arrest, including at the Puerto Rican Day Parade, which was highly triggering.

121.     After her arrest, Ms. Flanagan missed work to care for her physical and mental health.

122.     Ms. Flanagan was also unable to have contact with children until her criminal case was dismissed, which impacted her ability to do her job. While waiting for the charges to be dismissed, she felt as though she was living in limbo, unsure whether she would be able to continue to work at her job.

123.     Ms. Flanagan has continued to struggle with anxiety and depression. This violent incident upended her mental health. She restarted therapy to cope with the aftereffects. Her therapist has diagnosed her with generalized anxiety disorder and post-traumatic stress disorder.

***Ms. Flanagan Timely Files a Notice of Claim***

124.     Within ninety days after Defendants' October 21, 2023 attack and arrest of Ms. Flanagan, counsel for Ms. Flanagan filed a Notice of Claim with the New York City Comptroller's Office.

125.    Ms. Flanagan attended and testified at the hearing required under Section 50-h of the General Municipal Law on August 7, 2024, by video conference.

126.    This action has been commenced within one year and ninety days of the events upon which the claims are based.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Against All Individual Defendants)

127.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

128.    By reason of the foregoing, and by throwing, pushing, tackling, manhandling, pinning to the ground, forcibly restraining, and yanking Plaintiff off the ground by her arms with enough force to cause a separated shoulder after she was handcuffed, the Individual Defendants used unreasonable and excessive force under the circumstances.

129.    At all relevant times, the Individual Defendants acted under color of state law within the scope of their employment as police officers for the New York City Police Department.

130.    Plaintiff did not pose any threat to the safety of the Individual Defendants, or others. Plaintiff was unarmed. Plaintiff made no sudden movements. At all relevant times, Plaintiff's hands were visible.

131.    The Individual Defendants acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers to willfully, knowingly, and intentionally deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution. Throwing Plaintiff to the ground, forcibly pinning her arms behind her back, handcuffing her tightly, and then yanking her off the

ground with such force as to cause her shoulder to separate were gratuitous uses of force that were vastly out of proportion to any danger Plaintiff could have posed.

132.    The Individual Defendants failed to take any steps to prevent the excessive force used on Ms. Flanagan or to intervene at any point during her assault, though they had every opportunity to do so.

133.    As a direct and proximate result of the Individual Defendants' misconduct detailed above, Plaintiff sustained the damages alleged herein.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest
(Against All Individual Defendants)

134.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

135.    The Individual Defendants wrongfully and illegally arrested Plaintiff.

136.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

137.    Neither the Individual Defendants, nor any other NYPD officer, issued a dispersal order to Plaintiff before arresting her.

138.    Ms. Flanagan was charged only with resisting arrest, in violation of New York Penal Law Section 205.30, yet was not charged with any predicate crime the arrest for which she could have been resisting.

139.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

140.     At all relevant times, the Individual Defendants acted forcibly in apprehending and arresting Plaintiff.

141.     Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

142.     All this occurred without any fault or provocation on the part of Plaintiff.

143.     The Individual Defendants acted under pretense and color of state law. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

144.     The conduct of the Individual Defendants was willful, wanton, and reckless.

145.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Against Defendant Pichon)

146.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

147.     Defendant Pichon maliciously and without justification commenced criminal proceedings against Plaintiff.

148.     Defendant Pichon issued a desk appearance ticket to Plaintiff for violation of New York Penal Law Section 205.30, resisting arrest.

149.     Defendant Pichon charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

150.     Defendant Pichon acted with malice and knew or was deliberately and recklessly indifferent to the truth that he lacked probable cause to arrest, issue a desk appearance ticket to, and prosecute Plaintiff, and that no reliable information suggested Plaintiff had committed any offense.

151.     No reasonable officer would have believed there was probable cause to prosecute Plaintiff under these circumstances.

152.     The desk appearance ticket required Plaintiff to appear in court on pain of criminal prosecution.

153.     On November 9, 2023, the prosecution terminated in Plaintiff's favor when the King's County District Attorney declined to prosecute Plaintiff.

154.     Defendant Pichon acted under pretense and color of state law. He acted beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers, and Defendant Pichon acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

155.     Defendant Pichon's conduct was willful, wanton, and reckless.

156.     As a direct and proximate result of Defendant Pichon's actions, Plaintiff sustained the damages alleged herein.

**FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – First Amendment
First Amendment Retaliation
(Against Defendant Ceparano)

157.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

158.     Plaintiff engaged in activity protected by the First Amendment, including but not limited to participating in a peaceful protest and speaking out against excessive force used against a fellow protester.

159.     Defendant Ceparano's actions in using excessive force against Plaintiff and causing her to be arrested were motivated or substantially caused by Plaintiff's exercise of her First Amendment-protected rights, including her rights to protest and to complain to public officials.

160.     Defendant Ceparano's arrest of Plaintiff and use of excessive force had the purpose and effect of chilling Plaintiff's exercise of her free speech rights, protected by the First Amendment.

161.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
Common Law Negligence/Denial of Medical Care
(Against All Defendants)

162.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

163.     At all times relevant to this Complaint, Defendants owed a duty to Plaintiff to meet the standard of care owed to people detained before trial and/or to ensure that those under their supervision were trained adequately regarding the proper care of such detained people. The standard of care required, among other things, proper treatment of Plaintiff's injuries and not exacerbating Plaintiff's injuries by keeping her arms handcuffed behind her back for a prolonged period.

164.    Defendants negligently and/or wantonly breached and violated this standard of care, or caused it to be violated, by the foregoing, and by denying Plaintiff access to adequate medical care, failing and refusing to provide adequate medical treatment, and/or otherwise neglecting Plaintiff's medical needs. Defendants abused their power and failed to perform their duties in good faith.

165.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

166.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## SIXTH CAUSE OF ACTION
Common Law Assault
(Against All Defendants)

167.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

168.    By reason of the foregoing, the Individual Defendants, acting in their capacity as New York City Police Officers and within the scope of their employment as such, intentionally placed Plaintiff in apprehension of an imminent offensive contact and displayed the ability to effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Plaintiff.

169.    The assault committed by the Individual Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

170.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

171.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## SEVENTH CAUSE OF ACTION
Common Law Battery
(Against All Defendants)

172.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

173.    By reason of the foregoing, and by throwing, pushing, tackling, manhandling, pinning to the ground, forcibly restraining, and yanking Plaintiff off of the ground by her arms with enough force to cause a separated shoulder after she was handcuffed, the Individual Defendants, acting in their capacity as NYPD officers, and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

174.    The battery committed by the Individual Defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

175.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

176.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

## EIGHTH CAUSE OF ACTION
Common Law Malicious Prosecution
(Against Defendant Pichon and City of New York)

177.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

178.    Defendant Pichon, acting in his capacity as an NYPD officer and within the scope of his employment as such, maliciously commenced criminal proceedings against Plaintiff.

179.    Defendant Pichon issued a desk appearance ticket to Plaintiff for violation of New York Penal Law 205.30.

180.    Defendant Pichon charged Plaintiff falsely, in bad faith, and without probable cause.

181.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

182.    On November 9, 2023, the prosecution terminated in Plaintiff's favor when the King's County District Attorney declined to prosecute Plaintiff.

183.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

### NINTH CAUSE OF ACTION
Common Law False Arrest/False Imprisonment
(Against All Defendants)

184.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

185.    The Individual Defendants wrongfully and illegally arrested Plaintiff.

186.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

187.    Neither the Individual Defendants, nor any other NYPD officer, issued a dispersal order to Plaintiff before arresting her.

188.    Plaintiff was charged only with resisting arrest, in violation of New York Penal Law 205.30, yet was not charged with any predicate crime the arrest for which she could have been resisting.

189.    No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

190.    At all relevant times, the Individual Defendants acted forcibly in apprehending and arresting Plaintiff.

191.    Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

192.    All this occurred without any fault or provocation on the part of Plaintiff.

193.    The Individual Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being, and they are guilty of egregious and gross misconduct towards Plaintiff.

194.    Defendant City of New York, as employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

195.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages alleged herein.

**TENTH CAUSE OF ACTION**
Negligent Hiring, Retention, Training and Supervision
(Against Defendant City of New York)

196.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

197.    By virtue of the foregoing, the City of New York and its employees, servants and/or agents acting within the scope of their employment are liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire,

retain, train, and supervise the Individual Defendants, individuals who were unfit for the performance of police duties on October 21, 2023, at the aforementioned location.

198.     Plaintiff's injuries were reasonably foreseeable results of the City's breach of its duties.

199.     The City is liable for its negligent hiring, retention, training, and supervision of the Individual Defendants.

200.     As a direct and proximate result of the City's negligence, detailed above, Plaintiff sustained the damages alleged herein.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.     Compensatory damages in an amount to be determined at trial;

b.     Punitive damages against the Individual Defendants in an amount to be determined at trial;

c.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d.     Such other relief as this Court may deem just and proper.

Dated: January 16, 2025
         New York, New York

                                          EMERY CELLI BRINCKERHOFF
                                          ABADY WARD & MAAZEL LLP


                                          _____/s/ Laura S. Kokotailo_____
                                          Earl S. Ward
                                          Laura S. Kokotailo

                                          600 Fifth Avenue, 10th Floor
                                          New York, New York 10020

                                          (212) 763-5000

                                          *Attorneys for Plaintiff*